IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUANITA NAJERA, Individually and On Behalf of the ESTATE OF RAMON NAJERA, JR., RAYMOND A. NAJERA; SYLVIA MARTINEZ, and RICHARD G. NAJERA,<br>    *Plaintiffs*, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. <u>5:24-CV-1005</u> |
| | §<br>§ | **JURY DEMAND** |
| THE CITY OF SAN ANTONIO, ANDY SEGOVIA,<br>    *Defendants.* | §<br>§<br>§<br>§ | |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs JUANITA NAJERA, Individually and On Behalf of the ESTATE OF RAMON NAJRA, JR., RAYMOND A. NAJERA, SYLVIA MARTINEZ, and RICHARD G. NAJERA, and file this Original Complaint against Defendants, THE CITY OF SAN ANTONIO and ANDY SEGOVIA. In support thereof, Plaintiffs show the Court the following:

## **INTRODUCTION**

1.   Plaintiffs Juanita Najera, Raymond A. Najera, Richard G. Najera, and Sylvia Martinez, by and through their undersigned counsel, hereby file this Complaint against the City of San Antonio and City Attorney Andy Segovia for damages arising from a grievous and preventable tragedy. On February 24, 2023, Ms. Najera, and her husband, Ramon Najera, Jr., were violently attacked by dangerous dogs previously identified by city authorities as a significant threat to public safety. Mr. Najera, an 81-year-old Air

1

Force veteran, died after the horrific mauling. Despite repeated warnings, prior incidents of aggression, and clear evidence of the dogs' dangerous propensities, the City of San Antonio made the calamitous decision to release the animals back into the community.

2. This Complaint seeks redress for the negligence, constitutional misfeasance, and gross misconduct of the City of San Antonio, whose failure to act upon known threats and to protect its citizens directly resulted in the untimely and wrongful death of Mr. Najera. This Complaint alleges that the City of San Antonio's actions, or lack thereof, constituted a violation of the Fourteenth Amendment's Due Process Clause. By knowingly releasing dangerous animals that had already posed a severe threat to public safety, the City deprived the Najeras of their right to be free from arbitrary and dangerous government actions, thereby failing to protect their fundamental right to life and personal safety. The City's failure to adhere to reasonable safety standards represent a deliberate indifference to the constitutional rights of its residents. The City's conduct not only contravenes its own established protocols for handling dangerous animals but also reflects a profound disregard for the safety and due process rights of its citizens. This Complaint seeks redress for the violation of these constitutional rights, the immense suffering endured by the Najeras, and the need for judicial intervention to ensure accountability and prevent future tragedies.

## JURISDICTION & VENUE

3. This case arises under the United States Constitution and the laws of the United States, including the Fifth and Fourteenth Amendments to the United States Constitution, and pursuant to *Monell*. The court has subject matter jurisdiction under 28 U.S.C. §§ 1331(a) and 1343(a)(3) as this action arises under the Constitution and laws of the United States.

4. Venue is proper pursuant to 28 U. S. C. § 1391(b) because "a substantial part of the event or emissions giving rise to the claims occurred" in this District.

## PARTIES

5. Plaintiff, Juanita Najera, sues individually and on behalf of the estate of her deceased husband, Ramon Najera, Jr. Plaintiff resides in Leon Valley, Texas. Plaintiff brings her claims under 42 U.S.C. § 1983 and its related extension to the municipality via *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978), and pursuant to the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.001, et seq., the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.021, and all other applicable laws complaining of the various acts listed below.

6. Plaintiff, Ramon Najera, Jr., was an individual who resided in Leon Valley, Texas, and is now deceased.

7. Plaintiff, Ramon A. Najera, is the son of Ramon Najera, Jr., and he resides in San Antonio, Texas.

8. Plaintiff, Richard G. Najera, is the son of Ramon Najera, Jr., and he resides in San Antonio, Texas.

9. Plaintiff Sylvia Martinez is the daughter of Ramon Najera, Jr. and she resides in

10. Defendant The City of San Antonio ("the City") is a municipal governmental entity within the State of Texas and runs the Animal Care Services Department. It is also the employer of all involved investigating officers. City Manager Erik Walsh, Mayor Ron Nirenberg, and the City Counsel are the policy makers vested with authority to make policy within the Animal Care Services Department. The City is

reasonable for the management and operation of public services, including animal control. At all relevant times, the City was acting under the color of state law.

11.     Defendant Andy Segovia is sued in his official capacity as the City Attorney. Animal Control relied upon Defendant Andy Segovia to create and interpret the policy as official policymaker in conjunction with the City Manager as the official policymaker for the City of San Antonio. At all relevant times, Mr. Segovia was acting under the color of state law.

## FACTUAL BACKGROUND

12.     On February 24, 2023, a routine visit to a tailor's house turned into a nightmare for Mrs. Najera and her husband, Ramon Najera, Jr., when they were savagely attacked by two sixty-five-pound Pitbull terriers. These dogs, known threats to public safety, had been inadequately addressed by city authorities. That day, the Najeras parked on a public street while Mrs. Najera briefly visited the front door of her friend, who was a tailor, to hem her husband's security guard uniform. As she returned to the car, a vicious dog climbed the fence of a neighboring yard and launched an unprovoked attack on her in the street. Mr. Najera, an 81-year-old Air Force veteran, heroically exited the vehicle in a desperate attempt to save his wife, only to become the primary target of the brutal assault. A young man inside the home heard the couple's frantic screams and rushed to help, wielding a rake in a valiant but futile effort to fend off the dog. He was quickly overpowered and bitten as well. In a chilling escalation, a second dog scaled the fence and joined in the relentless attack on Mr. Najera. Despite the desperate efforts of neighbors—armed with hoses, rakes, and car horns—the onslaught continued unchecked.

13. Mr. Najera, a distinguished Air Force veteran, collapsed under the relentless assault. The attack was nothing short of horrific, inflicting excruciating, bone-exposing bites and tearing skin and muscle from his arms and other parts of his body. Tragically, he succumbed to his injuries, dying in the most brutal and agonizing way imaginable. Though Mrs. Najera survived, she was left with severe injuries and the unimaginable trauma of witnessing her husband's gruesome death. The attack only ended when the fire department arrived and resorted to using pickaxes on the dogs. The scene that greeted the responding officers was nothing short of a horror—a lawn soaked with large pools of blood, a grim testament to the violence that had occurred.

14. Below is a photograph of the officers attempting to stave off the dogs' attack:



15. Shockingly, this wasn't the only incident involving the dogs. Prior to the February 24, 2023, attack, the dogs were involved in at least three other attacks on people,

5

with two of the three resulting in bite wounds. On August 20, 2020, three years prior to the fatal mauling, the City confirmed in writing that it received affidavits from concerned citizens alleging that the dogs were dangerous and that they engaged in threatening physical behavior to humans. The City should have taken action in response to this complaint about the dangerous dogs and stopped any additional events from happening right then and there. But the City did nothing.

16. Because of the City's conduct, another individual became a victim of the dogs. On September 11, 2021, David Avila was attacked by the dogs as he was holding a baby. Yet again, the City did nothing and actively refused to appropriately investigate the incidents and dedicate the required resources to preventing future harm. Tragically, another, even more serious prior attack occurred just one month before the Najeras were attacked, resulted in the impoundment of the dogs by the San Antonio Animal Control Department ("Animal Control"). Despite the fact that the dogs were detained and impounded by San Antonio, and deemed dangerous under the City's own definition, the City contacted the owners of the dogs to give the dogs back, which should not have occurred.

17. The City did this in spite of their written regulations and in accordance with their unwritten policy to not invest resources in certain low-income, minority communities, such as where the dogs attacked in the prior incidents and in the current incident. According to the City's definition, a dog is identified as dangerous if:

> "1. It makes an unprovoked attack on a person that causes bodily injury. The incident will have occurred in a place other that an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own.
>
> 2. It commits unprovoked acts in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its

6

>own and those acts cause a person to reasonably believe that the dog will attack and cause bodily injury to that person."[1]

Texas law and City ordinances require a legally determined "dangerous dog" designation for specific requirements to apply, but this was not done with the dangerous dogs at hand.

18. Animal Control has the obligation to determine if dogs are dangerous and must investigate any complaints involving alleged dangerous animals. There is no question that based upon the previous incident, just one month before the incident taking Mr. Najera's life, that the dogs should have been categorized as dangerous. After that January 2023 incident, where the dogs, without provocation, attacked a person causing bodily injury, the dogs were seized, which was required by statute because they were deemed dangerous and a threat to the health and safety of people. *See* San Antonio Code of Ordinances, Chapter 5, §5-76(b) ("After receiving a sworn affidavit of complaint and upon making a decision that seizure is a reasonable precaution to insure the health and safety of people nearby, the director may order the immediate seizure and impound of the dog."); *See* San Antonio Code of Ordinances, Chapter 5, §5-76(c) ("An animal care officer may impound an alleged dangerous dog if the officer has cause to believe that a dog is dangerous as defined above."). The City contacted Reynaldo Vega, the victim of the January 2023 attack, took pictures, and drafted a narrative of the bite incident. It was determined that the dogs bit through the skin on the shoulder and leg of the victim. Despite having been involved in an attack, the City contacted the owners of the dogs to retrieve the dogs in exchange for $200, without any restriction.

---

[1] City of San Antonio, https://www.sa.gov/Directory/Departments/ACS/Animal-Control/Aggressive-Dogs (last accessed Aug. 26, 2024); *see also* Tex. Health & Safety Code, Ch. 822, §822.041.

19. As indicated above, the City knew that the dogs were dangerous on numerous occasions before the incident in question. Despite repeated warnings, prior incidents of aggression, and clear evidence of the dogs' dangerous propensities, the City of San Antonio deliberately decided to release the animals back into the community even though they had a documented history of attacking other individuals. The City released the dogs back into the community without adequate precautions or restrictions, thus failing in its duty to protect the public from these dangerous animals.

20. There is also no doubt that the dogs in question were dangerous. In addition to the clear evidence of dangerousness demonstrated above, as part of a criminal proceeding against the dogs' owners, Animal Control Officer Bethany Snowden testified that the dogs were dangerous and that they had bitten someone in September 2021 and again in January 2023. Snowden explained in her sworn testimony that a dog is defined as "dangerous" if, while free of restrain, a person feels the dog could cause injury to them. She further conceded that that there were "flaws within the system of ACS"— it is these flaws that resulted in Plaintiffs' injuries.

21. Defendant Andy Segovia, the City Attorney, Christopher Sims, the head of Animal Control, and the City Manager, were the official policymakers for the relevant Animal Control policies at issue and are charged with actual and constructive knowledge of official policies, practices, or customs within Animal Control. As indicated in the trial testimony of Christopher Sims, Animal Control relied on the City Attorney to provide the interpretation and guidance of the policies they created. Further, Sims testified that Animal Control followed City policy in its deficient and unconstitutional investigation and handling of the dangerous dogs.

22. The City's conduct was egregious and constituted a deliberate indifference to the safety and welfare of the public, specifically Mr. and Mrs. Najera. As a result of the

8

attack, and the City's egregious conduct, Ms. Najera suffered severe physical injuries, psychological trauma, and significant emotional distress; Mr. Najera sustained significant pain and suffering as he was brutally attacked to the death by the animals. The death of Mr. Najera, to which Mrs. Najera was a bystander who witnessed the incident contemporaneously with its occurrence, caused Mrs. Najera substantial emotional anguish and loss of the love, society, and companionship of her husband.

## CAUSES OF ACTION

### COUNT 1:  FOURTEENTH AMENDMENT DUE PROCESS VIOLATION

23. Plaintiffs incorporate by reference all preceding paragraphs.

24. The City of San Antonio's failure to properly manage and control a known dangerous dog constituted a violation of the substantive and procedural due process rights of the Najeras as protected by the Fourteenth Amendment. The right to life "is the most fundamental interest in American law, and it is expressly recognized in the text of the Fourteenth Amendment: "[N]or shall any State deprive a person of life …without due process of law." U.S. Const., amend. XIV (emphasis added). This clause provides that an individual may not be deprived of their rights to life, liberty, and property without constitutionally adequate procedures. Mr. Najera had the right to not have his life wrongfully taken, in violation of the constitution, and despite laws put in place to protect his rights. Similarly, Mrs. Najera had the right to liberty, to be free from a vicious attack that prevented her movement, in accordance with the laws in place, and without due process of law. These constitutional rights were wrongfully stripped from the Najeras by the City of San Antonio. The City was deliberately indifferent to the known dangers posed by the dogs, resulting in a violation of the substantive due process rights of the Najeras. By failing to act reasonably to protect public safety despite knowing the dogs'

history of attacks, the City deprived the Najeras of their right to be free from undue harm and danger. The City's unlawful handling of a known dangerous dog was an unreasonable and arbitrary action that violated the Najeras' substantive due process rights.

25. Further, the City must follow fair procedures before depriving individuals of life, liberty, or property. The City's actions that affected the Najeras' individual safety rights must have followed fair and transparent procedures. Yet, it did not. The City wrongfully denied the existence of prior complaints of the dogs' vicious history and failed to take appropriate action, and wrongfully undertook inappropriate action, in violation of the Najera's constitutional rights. The City also failed to follow existing policy, and created its own unconstitutional policy, in order to avoid expending resources to handle dangerous dogs. The City's actions and inactions exhibited a reckless disregard for the safety of individuals in the community, and lacked any rational basis, thereby violating the due process protections afforded to the Plaintiffs. These actions and inactions proximately caused the injuries and damages complained of herein.

**COUNT 2: FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION**

26. Plaintiffs incorporate by reference all preceding paragraphs.

27. The Fourteenth Amendment Equal Protection Clause mandates that no state shall deny to any person within its jurisdiction the equal protection of the laws. This means that individuals in similar situations must be treated equally by the law.

28. The City's affirmative conduct and reckless inaction in failing to control the dangerous dogs resulted in unequal protection for Mr. and Mrs. Najera compared to other community members. The City disproportionately refused to apply statutory protections to individuals on the Westside of San Antonio, which is largely comprised of

10

Latinos, and mostly low-incomes families. The City wrongfully diverted necessary resources, including those necessary for Animal Control to properly perform its functions, away from this economically disadvantaged, minority community, and disproportionately directed these resources to predominately white, economically prosperous parts of town.

29. By failing to act appropriately in controlling the dangerous dogs, and in diverting critical resources away from this minority, low-income area, the City of San Antonio treated the Najeras differently from other individuals in a similarly dangerous situation, thereby violating their right to equal protection under the Fourteenth Amendment. The City's failure to adequately address the threats posed by the dangerous dogs, and affirmative redirection of resources and funds, resulted in discriminatory harm to the Najeras, violating their right to equal protection, and subjecting them to a greater risk of harm and injury compared to other members of the community.

### COUNT 3:  28 U.S.C. § 1983: MONELL: Failure to Train and Supervise

30. Plaintiffs incorporate by reference all preceding paragraphs.

31. The City has inadequate policies of training and supervising Animal Control officers and officials regarding the handling of dangerous animals. Namely, the City has an unofficial policy, custom, or practice, of failing to take complete action in response to alleged dangerous dogs, fails to properly train offers and officials on how to identify these dangerous dogs, the proper process for handling complaints, and how to conduct thorough investigations to determine the dangers posed by the dogs.

32. The City also has an unofficial policy, custom, or practice of failing to supervise officials who have the obligation to investigate, identify, and handle dangerous dogs and allegations of allegedly dangerous dogs. The actions and/or omissions of the

11

supervisors overseeing the dangerous dog investigations can be characterized as supervisory encouragement or acquiescence and/or gross negligence amounting to deliberate indifference. This grossly inadequate supervision resulted from and was caused by the City's deliberate indifference to the rights of individuals not to be subjected to the deprivation of their constitutional rights. Such inadequate supervision was a direct and proximate cause of Plaintiffs' injuries and damages.

33. The governmental policy-makers actually and constructively knew of the existence of this unconstitutional policies, and these policies served as the moving force behind the violations.

34. The City's policies of improper and inadequate training and supervision in the identification, treatment, and handling of dangerous dogs resulted in the constitutional deprivations and damages alleged herein. As a direct cause and result of these constitutional violations by the City, Plaintiffs seek compensation for the injuries and damages set forth herein.

## COUNT 4:  28 U.S.C. § 1983: MONELL: Failure to Protect

35. Plaintiffs incorporate by reference all preceding paragraphs.

36. The City had a constitutional duty to protect the Najeras from the acts and omissions of its Animal Control officers, which violated the Najeras' constitutionally protected rights against unlawful deprivation of life, liberty, and of equal protection, and were objectively unreasonable based on the totality of the circumstances. The City violated the requirements of the Fourteenth Amendment rights held by the Najeras, as they related to their lives, and the integrity and safety of their persons, and equal protection under the law, and amounted to a failure to protect against unconstitutional policies, practices, and customs.

37. The City has an inadequate policy for protecting citizens from dangerous animals that it has a duty to secure. The City has an informal custom, practice, or policy regarding the investigation, identification, and handling of dangerous dogs and its failure to protect all individuals equally under the law from these animals. The governmental policy-makers actually and constructively knew of the existence of this unconstitutional policies, and these policies served as the moving force behind the violations. The City's custom, practice, and policy, and failure to protect was also the proximate cause of the deprivation of the Najeras' constitutional rights.

38. As a direct cause and result of these constitutional violations by the City, Plaintiffs seek compensation for the injuries and damages set forth herein.

## COUNT 5: Wrongful Death and Survival Claim

39. Plaintiffs incorporate by reference all preceding paragraphs.

40. Plaintiffs are the surviving spouse and children of decedent. Decedent died as a result of the City's wrongful conduct explained herein. Decedent would have been entitled to bring this action against Defendants if decedent had lived. The City's conduct that caused decedent's death was a producing cause of injury to Plaintiffs, which resulted in damages, which are within the jurisdictional limits of this Court.

41. Plaintiffs bring this Survival claim pursuant to CPRC Section 71.021, and any other claims permitted by Texas law for the Estate of the deceased, to recover all damages provided by law, including but not limited to pain and suffering, and funeral and burial expenses.

42. Decedent's death resulted from the City's willful acts or omissions as described herein or from Defendants' gross malfeasance which entitled decedent's

spouse and the heirs to decedent's body to exemplary damages under Texas Constitution article 16, section 26.

43. In addition to other counts, decedent, before dying, had causes of action as outlined herein. Decedent survived, and experienced pain, disfigurement, and mental anguish, prior to dying. Plaintiffs seek all available damages, as outlined herein, exemplary damages, attorneys' fees and equitable relief within the jurisdictional limits of this Court.

## COUNT 5:  State Created Danger

44. Plaintiffs incorporate by reference all preceding paragraphs.

45. Defendants' failure to properly investigate, classify, and manage the dangerous dogs constitutes a violation of Plaintiffs' due process rights.  Defendants failed to protect Plaintiffs from a known danger, and in fact created and enhanced the danger posed to Plaintiffs by releasing the animals without the dangerous dog designations. The City has explicit protocol that allows dogs to be designated as dangerous that would have informed the owner of necessary requirements that would have protected Plaintiffs in the instant case.

46. To wit, after a dog is appropriately designated as dangerous, the dog must be licensed, *wear a special collar, kept in a secure enclosure, wear a muzzle when outside*, be microchipped, and be fixed. Further, when designated as a dangerous dog, the owner must purchase $100,000 in liability insurance, post a warning sign on their property warning individuals, like Plaintiffs, attend a pet ownership class, and allow annual inspection by Animal Control to ensure compliance. This is best summarized by a flyer published by the City and Animal Control:



47. Any and all of these measures would have prevented the incident from occurring and the failure to adopt any of these measures proximately caused the complained-of injuries and damages.

48. Defendants' actions, including the failure to act appropriately after receiving affidavits, the failure to obtain affidavits, and the failure to properly classify the dogs as dangerous, directly placed the Plaintiffs in greater danger than they would have otherwise faced, constituting a state-created danger.

49. Plaintiffs seek compensatory damages, attorney's fees, and an injunction requiring Defendants to comply with proper procedures for managing dangerous animals.

## DEMAND FOR A JURY TRIAL

50. Plaintiffs ask the Court for a jury trial.

## CONDITIONS PRECEDENT

51. All conditions precedent have been performed or have occurred.

## COMPLIANCE WITH NOTICE PROVISIONS

52. Plaintiffs timely presented their claim to Defendants.

## DAMAGES

53. As. Direct and proximate result of the City and Mr. Segovia's actions, Plaintiffs suffered the following injuries and damages:

   a. Medical expenses in the past and future;

   b. Mental anguish in the past and future;

   c. Disfigurement in the past and future;

   d. Physical impairment in the past and future;

   e. Lost earnings;

   f. Loss of earning capacity;

   g. Physical pain and suffering; and

   h. Loss of consortium in the past and future.

## ATTORNEY FEES & COSTS

54. Plaintiffs entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

**PRAYER**

55. For these reasons, Plaintiffs ask for judgment against the City and Andy Segovia for the following:

   a. Actual damages;

   b. Punitive damages;

   c. Reasonable attorney fees;

   d. Prejudgment and post-judgment interest

   e. Costs of suit;

   f. All other relief the Court deems appropriate.

> Respectfully Submitted,
>
> By: /s/ *Marion M. Reilly*
> John B. Martinez
> Federal Bar No. 23612
> State Bar No. 24010212
> Email: John@mrtrial.com
> Marion M. Reilly
> Federal Bar No. 1357491
> State Bar No. 24079195
> Email: Marion@mrtrial.com
> Kyle Batson
> Texas State Bar No. 24136732
> Email: Kyle@mrtrial.com
> **MARTINEZ REILLY, LLP**
> 3636 South Alameda, Ste. B119
> Corpus Christi, Texas 78411
> Dir: (361) 273-6771
> Fax: (361) 704-8355
> **Service Email address
>
> Service@mrtrial.com
>
> **ATTORNEY IN CHARGE**
>
> and
>
> **LeGRAND & BERNSTEIN**

        BY:    */s/ George LeGrand*
        GEORGE LEGRAND
        State Bar No.   12171450
        tegrande@aol.com
        2511 North St. Mary's Street
        San Antonio, Texas   78212
        (210) 733-9439   Telephone
        (210) 735-3542   Facsimile
        **STANLEY BERNSTEIN**
        State Bar No.   02218900
        sb@legrandandbernstein.com
        JERRY GIBSON
        State Bar No. 07868000
        jerry@jgibsonmediation.com
        BRENT DE LA PAZ
        State Bar No.   24036462
        brent@delapazlawfirm.com
        2511 North St. Mary's Street
        San Antonio, Texas   78212
        (210) 229-1322   Telephone
        (210) 229-9405   Facsimile

        ***ATTORNEYS FOR PLAINTIFFS***